UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2006 DEC 18 P 1:21
U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Cr. No. H-90-18 |
| vs. | ) | Civ. No. 3:95CV1145 [AHN] |
| | ) | |
| GAETANO MILANO | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | Cr. No. H-90-18 |
| vs. | ) | Civ. No. 3:95CV1171 [AHN] |
| | ) | |
| LOUIS PUGLIANO | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | Cr. No. H-90-18 |
| vs. | ) | Civ. No. 3:95CV1330 [AHN] |
| | ) | |
| FRANK A. PUGLIANO | ) | |

PETITIONER LOUIS PUGLIANO'S
RESENTENCING MEMORANDUM

The Court is faced with the rather unusual task of resentencing Mr. Pugliano a little more than sixteen years after his conviction after a jury trial. The parties agree that this resentencing should be carried out under the current sentencing regime, which is much more flexible than the regime in place at the time Mr. Pugliano was originally sentenced. Mr. Pugliano requests a sentence to the period of imprisonment he has served, which is slightly more than 196 months. The purpose of this memorandum is to set forth the reasons and rationale for this requested sentence.

1

I. <u>The Court Should Impose A Non-Guidelines Sentence</u>.

Under the post-<u>Booker</u> sentencing regime, a federal sentencing judge has considerable leeway in fashioning a just sentence in a particular case. The law is clear that, at this point in time, the law is sufficiently flexible to authorize the Court to impose the sentence Petitioner requests.

Following the Supreme Court's decision in <u>United States v. Booker</u>, 543 U.S. 220 (2005) the Second Circuit began establishing procedures and standards for implementing the altered sentencing scheme which the <u>Booker</u> decision prescribed. The first of these decisions, <u>United States v. Crosby</u>, 397 F3d 103 (2nd Cir. 2005)[1] the Second Circuit said that, to implement <u>Booker</u>, the district courts must [1] treat the Guidelines as non-binding; [2] consider the Guidelines and all of the other factors listed in 18 U.S.C. § 3553(a); [3] in considering the Guidelines, usually determine the applicable Guidelines range, or at least identify the arguably applicable ranges and the applicable policy statements; and [4] decide whether to impose a Guidelines sentence or a non-Guidelines sentence. 397 F3d at 113. Overall, the Second Circuit said:

> "[T]he Supreme Court expects sentencing judges to faithfully discharge their statutory obligation to "consider" the Guidelines and all of the other factors listed in section 3553(a). We have every confidence that the judges of this Circuit will do so, and that the resulting sentences will continue to substantially reduce unwarranted disparities while now achieving somewhat more individualized justice. In short, there need be no "fear of judging."

<u>Crosby</u>, 397 F3d at 114. Where the sentencing judge decides to impose a non-Guidelines sentence, "consideration" of the Guidelines does not necessarily require

---

[1]The opinion was circulated among all members of the Court of Appeals before publication. 397 F3d at 105 n. 1.

2

"precise calculation of the applicable Guidelines." In considering departure issues, where a close question arises regarding the precise meaning or best application of a policy statement concerning the departure, "a judge who has considered policy statements concerning departures need not definitively resolve such questions if the judge has fairly decided to impose a non-Guidelines sentence." Id., at 112. Further:

> "We recognize that additional situations may arise where the sentencing judge would not need to resolve every factual issue and calculate the precise Guidelines range, because the resolution of those issues might not affect a non-Guidelines sentence if the sentencing judge chooses to impose it."

Id., at 112, n. 12. The Court noted that in analogous contexts, it has taken a liberal view of the term "consider," and not required detailed findings: "Although these decisions do not rule definitively on the meaning of 'consider,' they have refrained from imposing any rigorous requirement of specific articulation by the sentencing judge." Id., at 113. The Court left it to the district courts to determine what weight to give to the Guidelines in sentencing.

A. <u>A Brief History Of The Case</u>.

Mr. Pugliano was convicted by the jury of counts I, III and IV of the indictment. He was acquitted of count II, racketeering [RICO]. The June 13, 1989 murder of William Grasso was alleged as a predicate act in counts I and II as a racketeering act and in count IV as a violent crime in aid of racketeering in count IV. Mr. Pugliano was sentenced to life imprisonment on counts I and IV, and to 120 months imprisonment on count III, all concurrent. Five year periods of supervised release were imposed on counts I and IV, and three year was imposed on Count III. A fine of $50,000, the costs of supervision, and a special assessment of $150,000 were also imposed. The

imprisonment element of the count III sentence has been fully served and need not be revisited. The factual basis of Mr. Pugliano's conviction -- a conspiracy to murder William Grasso and the murder of Mr. Grasso -- is set out in the presentence report, principally in ¶¶ 72-132, pp. 17-30. The Government's evidence of Mr. Pugliano's role in that crime is addressed later in this memorandum. See, p. 7.

The Government's evidence was that five men conspired and carried out the Grasso murder. John Castagna and Jackie Johns were not charged for their parts in these crimes; they testified for the Government. Co-defendants Gaetano Milano and Frank Colantoni were also convicted on counts which incorporated the Grasso murder: Mr. Milano, who was convicted of killing Mr. Grasso, was sentenced to 396 months imprisonment [with a $100 special assessment, a $50,000 fine and a three-year term of supervised release]; Mr. Colantoni, who assisted in the murder, was sentenced to 151 months imprisonment. Petitioner Louis Pugliano, who was convicted of driving the van in which the murder was committed, was sentenced to life imprisonment without parole.

Mr. Pugliano's life sentence was mandated by his Guidelines range score of 43 for the offenses for which he was convicted. The statutory penalties for both of the murder-related crimes he was convicted of permitted imprisonment for any term of years or for life. 18 U.S.C. §§1959, 1962. His trial counsel did not advocate any reduction in his offense level nor any downward departure.

Mr. Pugliano's sentence has been vacated on the Court's finding that he received ineffective assistance of counsel in the original sentencing proceeding, and the remedy of resentencing has been ordered.

Mr. Pugliano requests that the Court impose a non-Guidelines sentence

equivalent to the time he has served since his arrest and detention on August 20, 1990. This sentence is an appropriate sentence under section 3553(a) when all the factors prescribed in that statute are taken into consideration.

B. <u>The Court Should Impose A Non-Guidelines Sentence</u>.

The parties agree that the Court should impose a non-Guidelines sentence. Perhaps the strongest reasons for this recommendation are Mr. Pugliano's age and compromised physical condition, and the fairness of imposing a sentence that is more commensurate with the level of his culpability for the crimes of conviction in relation to the sentences imposed on his codefendants. The federal sentencing statute, 18 U.S.C. § 3553(a), affords greater flexibility to the sentencing court than the Guidelines do. Even so, a sentence to time served can also be justified under the Guidelines.

Section 3553(a) provides:

> (a) Factors to be considered in imposing a sentence – The court shall impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed –
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for –
>     (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
>         (I) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress

(regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
        (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or
   (B) in the case of a violation of probation or supervised release....;
(5) any pertinent policy statement –
   (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
   (B) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced.
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
   (7) the need to provide restitution to any victims of the offense."

<u>Nature and circumstances of the crimes</u>. The victim, William Grasso, was a violent and dangerous man who was responsible for multiple murders and many other violent crimes. Gitano Milano, the man who admitted killing Mr. Grasso, told the Court at his sentencing that, from his perspective at the time of the conspiracy and murder, the circumstances were "kill or be killed." By making note of these circumstances, Petitioner does not suggest that he or anyone else acted in self-defense with respect to Mr. Grasso. Mr. Pugliano acknowledges that the offenses he was convicted of were very serious crimes for which a substantial period of imprisonment is appropriate. Mr. Pugliano has served approximately 16 years and 4 months imprisonment on these convictions. He submits that this 196 months is a sufficient punishment to satisfy the purposes of section 3553(a)(2).

Owing to the nature of his convictions and the circumstances in which Mr. Grasso was murdered, Mr. Pugliano has served his entire sentence in maximum security prisons: ten years in USP Lewisburg, five years in USP Ray Brook and sixteen

months in USP Canaan. Because he is serving a life sentence, he has been classified as a high security prisoner. Accordingly, in these prisons he has been subject to unrelentingly harsh physical conditions which have had an adverse impact on his health, owing in part to the fact that he has passed from 65 to 80 years of age during that period. This sentence has reflected the seriousness of his offenses, and has been sufficiently severe to promote respect for the law and to provide just punishment for the crimes of conviction. It has also been sufficiently harsh to lend force to the law's general deterrence and specific deterrence goals. No further imprisonment is necessary to protect the public from a risk that Mr. Pugliano might commit crimes in the future: he declares to the Court that there is no such risk. No further imprisonment is necessary to provide Mr. Pugliano with rehabilitation or medical care; indeed, his medical needs are such that they will be better met outside the prison system. For these reasons, the objectives of section 3553(a) have been satisfied by the 196 months he has already served, and further imprisonment will not serve any penological purpose.

B. <u>Consideration Of The Sentencing Guidelines</u>.

Consideration of the sentencing Guidelines confirms that 196 months falls within the sentencing range they would require if applied to him. Under the Guidelines, the starting point for Mr. Pugliano's convictions is a base offense level of 43; his criminal history puts him in category I.

<u>Acceptance of Responsibility</u>. Ordinarily an adjustment for acceptance of responsibility would not be available to Mr. Pugliano sixteen years after trial. Special circumstances warrant this adjustment because Mr. Pugliano's ability to plead guilty

was constrained by bargaining constraints which were beyond his control. The Government proposed an all-or-nothing universal plea agreement before trial under which Mr. Pugliano was offered a recommendation of 78 to 97 months imprisonment. Mr. Pugliano was unable to accept that offer because one or more of his codefendants refused to go along. He was then tried, appealed his convictions and challenged them in a Section 2255 collateral attack. But he has pursued only meritorious claims and, under the terms of his present agreement with the Government, he has accepted responsibility for his conduct and waived his remaining postconviction claims. In the circumstances, the Court would be warranted in making a 2-point adjustment to reduce his offense level to 41.

Role in Offense. A further adjustment should be made for Mr. Pugliano's minor role in the offense. He agreed to and drove the van in which Mr. Grasso was murdered. He was not involved in the original conspiracy. By all accounts, others planned Mr. Grasso's murder and attempted three times to carry it out before June 13, 1989. Mr. Pugliano's involvement in the murder conspiracy began and ended on the day of the murder; he was not involved in the disposal of the body. He received no pecuniary benefit from the murder.

> "The propriety of a downward adjustment is determined by comparing the acts of each participant in relation to the relevant conduct for which the participant is held accountable and by measuring each participant's individual acts and relative culpability against the elements of the offense."

United States v. Hildebrand, 152 F3d 756, 767 (8th Cir. 1998). Of the five men involved in the conspiracy and murder, only Mr. Pugliano received a life sentence. In relation to the others involved, his role was minor but not minimal; this warrants a 2-point

adjustment to level 39.

<u>Downward Departures</u>. The Court should also consider a downward departure under §5k2.10 based on the victim's conduct. Mr. Grasso was the head of an organized crime faction and posed a dire threat to Mr. Milano's life. Substantial evidence in the record indicates that this murder was a product of a violent internecine struggle which was occurring throughout New England and that Mr. Grasso's menacing conduct toward Mr. Milano prompted the latter to perceive that he was in a "kill or be killed" dilemma. Where the victim's wrongful conduct contributes significantly to provoking the crime against him, downward departures under this section have been granted and upheld. <u>United States v. Dailey</u>, 24 F3d 1323 (11th Cir. 1994).

Two downward departures would be appropriate if Mr. Pugliano were to be resentenced under the Guidelines, one for personal health [§5H1.1] and one for unusual family circumstances [§5H1.6]. Mr. Pugliano was 80 years old in August, 2006. On January 6, 2006 his gall bladder was surgically removed in a local hospital near Ray Brook, New York. Recovery from this surgery took eight days rather than the usual one day. Three weeks later he was moved to USP Lewisburg for a few days and then to USP Canaan in Waymart, Pennsylvania. He has developed a large post-surgical hernia just below the right side of his rib cage which calls for surgical repair; this has yet to be done. He suffers from chronic hypertension and cardiomegaly [enlarged heart, often associated with hypertension; and an enlarged prostate which needs treatment.

Mr. Pugliano's family exceptional family circumstances also warrant a downward departure. He has two sons. The elder son, John, is autistic and unable to contribute to family needs. The younger son, Frank, is married; he and his wife Tanya have two ,

9

an 11 year-old son and an 8 year-old daughter. In the time since Mr. Pugliano was originally sentenced, Tanya has been diagnosed with multiple sclerosis, a debilitating neurological disease which in her case has developed rapidly and is reaching the point of interfering with her ability to care for the children. Frank suffers from alcoholism and has recently had to close his restaurant business owing to bankruptcy. He is currently in an alcohol detoxification facility. This young family needs Mr. Pugliano's financial support and assistance in child-rearing. This type of departure is for the benefit of the family rather than for the benefit of the defendant. United States v. Johnson, 964 F2d 124, 129-130 (2nd Cir. 1992); United States v. Alba, 933 F2d 1117, 1122 (2nd Cir. 1991).

In the event the Court decides to impose a non-Guidelines sentence, it is not necessary to calculate the exact measure of downward departure warranted by these three sets of circumstances. Crosby, 397 F3d at 112-114. Certainly, departures sufficient to reduce Mr. Pugliano's adjusted offense level to 36, are warranted. With his criminal history category of 1, the sentencing range is for that adjusted offense level is 188 to 235 months, and the time Mr. Pugliano has served – 196 months – falls well within that range.

## CONCLUSION

In the unique circumstances of this case, the Court should impose a non-Guidelines sentence of time served, which is approximately 196 months. This sentence is sufficient to satisfy the policy objectives of section 3553(a). He has taken responsibility for his actions. Further imprisonment of this 80 year-old man is unnecessary and his family will benefit considerably if he is permitted to assist his son's family through a very difficult time.

Respectfully submitted,
LOUIS PUGLIANO, PETITIONER

By /s/ John M. Thompson

John M. Thompson
Thompson & Thompson, P.C.
1331 Main Street, Suite 320
Springfield, MA 01103
[413] 739-2100
Federal Bar # CT15144

### Certificate of Service

I hereby certify that a true and accurate copy of the foregoing document has been served upon Assistant United States Attorney ~~Peter Jongbloed~~ James Filan in hand, this 18th day of December, 2006.

John M. Thompson